UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KAMILLA SHULANOVA,

Plaintiff,

v.

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, MELISSA AVILES-RAMOS, MICHAEL PRAYOR, and DARA KAMMERMAN,

Defendants.

**MEMORANDUM & ORDER**
25-CV-4835 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Kamilla Shulanova sued her former employer, the New York City Department of Education ("DOE"); Melissa Aviles-Ramos, the DOE Chancellor; Michael Prayor, the DOE Superintendent; and Dara Kammerman, a DOE Principal, in Kings County Supreme Court, asserting two claims against the DOE under the New York State Human Rights Law ("NYSHRL") (Counts One and Two), two claims against the DOE under the New York City Human Rights Law ("NYCHRL") (Counts Three and Four), and one claim of First Amendment retaliation against all Defendants under 42 U.S.C. § 1983 (Count Five). *See* ECF No. 1-1 (Complaint).[1] Based on Plaintiff's sole federal claim, Defendants removed the case to federal court, *see* ECF No. 1 (Notice of Removal), and moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), *see* ECF No. 36 (Motion to Dismiss). For the reasons that follow, the Court GRANTS Defendants' motion to dismiss the federal claim and remands the remaining claims to state court.

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

Plaintiff is a Muslim woman from Uzbekistan and a former physical education teacher at Origins High School in Brooklyn. ECF No. 33 ¶¶ 9–10 (Amended Complaint; "AC"). Plaintiff's employment at Origins began in September 2022 and ended two years later, in September 2024, after her employment was discontinued. *Id.* ¶¶ 10, 37. Plaintiff alleges that during her employment at Origins, she was subjected to discrimination based on her national origin, gender, and religion, and that Defendants retaliated against her after she spoke to the press about the discrimination she experienced at the school. *Id.* ¶¶ 35, 55.

Specifically, Plaintiff asserts that beginning around November 2022, and until the termination of her employment in September 2024, her co-worker, Zachary O'Hara, harassed her about four to five times a month. *Id.* ¶ 13. For example, O'Hara:

- Yelled at Plaintiff in front of her students and a coworker. *Id.*
- Called Plaintiff a "f*cking rat," unstable, and slow. *Id.* ¶¶ 14, 16.
- Stated "two to three times" that "Muslim people owned the bodegas," that he has "never seen a black person own one," and on one occasion stated that "Muslims [are] always creating problems and fighting." *Id.* ¶ 14.
- Tried to follow Plaintiff into her office and kicked the door but was stopped by a co-worker, who reported the incident to Assistant Principal ("AP") Hendrickson. *Id.* ¶ 15.

[2] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

- Kept coming into Plaintiff's office even after she requested a different space, and at one point, rifled through her desk. *Id.* ¶ 21.
- Called Plaintiff a "terrorist," after which she filed a complaint against O'Hara. *Id.* ¶ 20.
- Discriminated against female Muslim students and made inappropriate comments to female students in general. *Id.* ¶¶ 22–23.

Plaintiff alleges that she reported O'Hara's harassment to Defendant Kammerman at least six times in writing and more than 10 times orally, but that Kammerman kept redirecting her to AP Hendrickson. *Id.* ¶ 17. Plaintiff further alleges that her union, the United Federation of Teachers ("UFT"), held a mediation session with Plaintiff, O'Hara, another co-worker, and several UFT representatives, but that she only had six minutes to speak, and nothing ever came of the mediation. *Id.* ¶¶ 18–19.

On March 4, 2024, at the suggestion of the school's Athletic Director, Plaintiff spoke with CBS News. *See id.* ¶¶ 24–26. Plaintiff explained: "I'm Muslim and by [O'Hara] I've been called many names . . . . Recently, he actually called me a terrorist." *Id.* ¶ 24. Plaintiff also explained that "she has been filing reports with the Interim Principal Dara Kammerman and the [teachers'] union, but no action has been taken." *Id.* Finally, Plaintiff shared that she has witnessed antisemitism at the school, and that she helped translate "a disciplinary meeting . . . between the principal and a student" after the student "[drew] a swastika on a notebook." *Id.* Plaintiff recounted that the principal asked the student, "you do know this is not right?" and the student replied, "Yeah, I know," but that the school took no further disciplinary action. *Id.* Kammerman, for her part, maintained that "she was never made aware of any discrimination

against [Plaintiff], and she refuted allegations . . . that a lack of disciplinary action has fostered an unsafe environment." *Id.*

Plaintiff asserts that after her news appearance, she "was more isolated from the administrators, and some colleagues would not interact with her." *Id.* ¶ 26. Plaintiff's union representative informed Plaintiff that he spoke with Kammerman, who told him that Plaintiff should not have gone on the news. *Id.* ¶ 27. Plaintiff asked to meet with Kammerman but was told that she had to speak with the DOE attorney first. *Id.* According to Plaintiff, "many students and coworkers . . . told Plaintiff that they saw [her] on CBS news," and her appearance on the news was "common knowledge at the school." *Id.* ¶¶ 28–29.

Over two months after Plaintiff's news appearance, on May 10, 2024, and June 7, 2024, Plaintiff received classroom observation scores that were lower than her usual "Highly Effective/Effective" scores. *Id.* ¶¶ 10, 33. On May 29, 2024, Plaintiff met with Kammerman and AP Hendrickson, and Kammerman "told Plaintiff she had strong feelings about her not fitting in at Origins High School and strongly recommended Plaintiff leave and find a job elsewhere." *Id.* ¶ 34. When Plaintiff asked Kammerman why she did not fit in and how she could improve, Kammerman responded, "There is nothing you could do, and it's time for you to start fresh in a different school." *Id.* Finally, Plaintiff inquired why she was being let go, and Kammerman replied, "If you don't like it here, you definitely should leave the school." *Id.* Plaintiff was then "investigated for pretextual reasons and was advised on August 16, 2024, that she would

be discontinued." *Id.* ¶ 36. On September 16, 2024, Plaintiff's employment was discontinued, again "for pretextual reasons."[3] *Id.* ¶ 37.

## LEGAL STANDARD

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-1176-cv, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024).

[3] On April 14, 2026, Plaintiff filed a notice of supplemental authority, which attached an arbitration decision. *See* ECF No. 42 (Notice of Supplemental Authority). That decision followed an arbitration hearing held on March 27, 2026, after which the arbitrator determined that three disciplinary letters filed by the DOE against Plaintiff—two on July 26, 2024, and one on August 1, 2024—were issued outside of the permissible time period under the governing Collective Bargaining Agreement and were therefore improperly placed in Plaintiff's official personnel file. *See* ECF No. 42-1 at 3 (Exhibit A; Expedited Arbitration Award). The Court does not consider this supplemental authority in its resolution of Defendants' motion to dismiss, as Plaintiff does not reference the disciplinary letters at issue in the arbitration in her AC. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (On a motion to dismiss, a court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.").

## DISCUSSION

### I. First Amendment Claim

"To establish First Amendment retaliation by a government actor, the plaintiff must demonstrate that (1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 94 (2d Cir. 2020). Assuming, without deciding, that Plaintiff satisfies the first two prongs, the Court concludes that Plaintiff fails to satisfy the third prong—causation—which alone forecloses her First Amendment claim.

"To demonstrate a causal connection, a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015). A plaintiff may do this in one of two ways: "either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Id.* "Since a direct showing requires [a] plaintiff to provide tangible proof of retaliatory animus, conclusory assertions of retaliatory motive are insufficient." *Id.* at 118–19.

Where a plaintiff seeks to rely solely on temporal proximity, such proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Although there is no bright-line rule, courts in this Circuit have held that a lapse of more than two months between the protected activity and the adverse action does not support an inference of causation. *See, e.g.*, *Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 480 (2d Cir. 2009) (two-month gap insufficient to establish causation); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 86 (2d Cir. 1990) (three-month gap insufficient to establish causation); *Ruhling v. Trib. Co.*, No. cv-04-

2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (noting "passage of two months . . . seems to be the dividing line"). Moreover, "it is axiomatic that a First Amendment retaliation claim does not exist where the defendants had no knowledge of the allegedly protected speech." *Morales v. City of New York*, 525 F. Supp. 3d 463, 479 (S.D.N.Y. 2021).

Here, Plaintiff alleges that Defendants terminated her employment "for speaking out to the press about discriminatory conditions at her school." AC ¶ 55. Defendants argue that the lapse of more than five months between Plaintiff's March 4, 2024, news appearance and the August 16, 2024, notification of her termination "breaks any inference of causation based on temporal proximity." ECF No. 37 at 30 (Defendants' Memorandum of Law). That argument assumes that the relevant adverse employment action is the August 16, 2024, notification of Plaintiff's termination. Alternatively, Defendants assert that "[e]ven if Plaintiff attempts to raise a temporal proximity argument based on the alleged May 29 meeting with Kammerman" as the adverse action, that argument likewise fails because the meeting allegedly occurred nearly three months after Plaintiff's news appearance, and "most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Id.* at 30–31.

In Opposition, Plaintiff fails to rebut Defendants' temporal proximity argument, including Defendants' position that the operative adverse action is the August 16, 2024, notice of discontinuance. Instead, Plaintiff merely reiterates that "Kammerman knew about the CBS appearance, believed [P]laintiff should not have gone to the news, refused to meet with her absent DOE counsel, and then participated in the May 29 meeting where she told [P]laintiff to leave the school." ECF No. 41 at 24 (Plaintiff's Corrected Memorandum of Law). Plaintiff further reiterates that she experienced "lower observation[] [scores] after the [news] interview, a pretextual investigation, notice of discontinuance, and final discontinuance." *Id.* at 24–25.

Plaintiff makes no direct showing of a retaliatory motive; therefore, the Court considers whether she adequately alleges causation indirectly. Because Plaintiff did not respond to Defendants' argument that her August 16, 2024, notice of discontinuance was not sufficiently close in time to her March 4, 2024, news interview, she has effectively conceded it. *See Ventillo v. Falco*, No. 19-cv-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) ("As Plaintiff did not respond to Defendants on this point, he effectively conceded the argument by his failure to respond."). In any event, the Court agrees with Defendants that the lapse of over five months is not sufficiently close in time to create an inference of causation. *See Breeden*, 532 U.S. at 273; *see Pitton v. New York City Dep't of Educ.*, 148 F. Supp. 3d 217, 230 (E.D.N.Y. 2015) (no causation where nearly five months passed between speech and notification of termination). And even if the Court were to liberally construe Plaintiff's Opposition to assert that the relevant adverse action was the May 29, 2024, meeting with Kammerman and AP Hendrickson, that would still be too attenuated from Plaintiff's March 4, 2024, news appearance, as it occurred almost three months later. *See* AC ¶ 34; *Ruhling*, 2007 WL 28283, at *23; *Skrine v. City of New York*, No. 22-cv-04022, 2024 WL 3938004, at *3 (E.D.N.Y. Aug. 26, 2024) ("[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.").[4]

---

[4] To be sure, "[o]ther types of circumstantial evidence besides temporal proximity may also suffice for an indirect showing of causation," such as "disparate treatment or a pattern of antagonism." *Van Allen v. New York City Sch. Constr. Auth.*, No. 17-cv-2176, 2018 WL 4783966, at *8 (E.D.N.Y. Sept. 30, 2018). Here, however, Plaintiff makes no allegation that after she spoke with the press, she was subjected to disparate treatment by Defendants, meaning she "was treated worse than similarly situated persons." *Id.* at 10. Nor does she allege a pattern of antagonism by Defendants. In fact, the only Defendant she specifically alleges took any sort of action against her is Kammerman, who allegedly told a union representative that Plaintiff "should not have gone on the news," would not meet with Plaintiff without DOE counsel involved, and encouraged Plaintiff to leave the school at a meeting almost three months after the

Finally, although Plaintiff alleges that Kammerman was aware of her news interview and disapproved, *see* AC ¶ 27, Plaintiff does not specifically allege that any other Defendant knew about the interview, which defeats her First Amendment claim as to those Defendants. *See Morales*, 525 F. Supp. 3d at 479.

Because Plaintiff fails to plausibly allege that her news appearance "was a substantial motivating factor" in any adverse employment action, she fails to state a claim for First Amendment retaliation. *Smith*, 776 F.3d at 118. Accordingly, that claim is dismissed.[5]

---

news interview. *See* AC ¶¶ 27, 34. This series of events does not rise to the level of a pattern of antagonism or "an ongoing campaign of adverse action." *Econ. Opportunity Comm'n of Nassau Cnty., Inc. v. Cnty. of Nassau*, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000).

[5] Defendants also argue that: (1) Plaintiff fails to state a plausible *Monell* claim against the DOE; and (2) Plaintiff fails to plausibly allege the individual Defendants' personal involvement in the purported First Amendment violation, which defeats a Section 1983 claim. *See* ECF No. 37 at 31–33.

Regarding the *Monell* argument, "[i]t is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation." *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding that a district court need not address *Monell* liability if it finds no underlying constitutional violation). Because the Court concludes that there was no constitutional violation, there can be no *Monell* liability against the DOE with respect to the First Amendment retaliation claim. *See Grytsyk v. Morales*, 527 F. Supp. 3d 639, 658 (S.D.N.Y. 2021) ("Because the Court concluded above that [plaintiff's Section 1983] claims fail, it follows that there can be no municipal liability with respect to these claims.").

As for personal involvement, an individual defendant must be "personally involved" in the deprivation of constitutional rights in order to be liable under Section 1983. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Again, however, because Plaintiff has failed to plausibly allege a constitutional violation, the Court need not address Defendants' argument regarding personal involvement. *See Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."); *Dawson v. City of New York*, No. 13-cv-5956, 2014 WL 5020595, at *2 n.2 (S.D.N.Y. Oct. 8, 2014) (declining to address defendants' argument regarding personal involvement because plaintiff failed to state a claim for a constitutional violation).

Finally, to the extent Plaintiff pleads a violation of her Fourteenth Amendment due process rights based on a purported First Amendment violation, *see* AC ¶ 60, the Court dismisses that claim, because again, Plaintiff fails to plead a First Amendment violation. Likewise, because Plaintiff fails to plead a constitutional violation, the Court dismisses Plaintiff's request for a declaration that Defendants violated her constitutional rights. *See id.* at 11.

## II. State Law Claims

The Court next addresses Plaintiff's state law claims under the NYSHRL and NYCHRL. *See* AC ¶¶ 42–53. Although district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). And a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). District courts may use their discretion in deciding whether to exercise supplemental jurisdiction over state law claims when all federal claims were dismissed at the pleading stage. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Because this case has progressed only to the motion to dismiss stage without the parties conducting discovery beyond initial disclosures, applying the normal presumption against supplemental jurisdiction is appropriate. *See Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019) ("find[ing] no abuse of discretion" where district court declined to exercise supplemental jurisdiction at motion to dismiss stage); ECF No. 45 at 1 (Defendants' Letter) (noting that after the parties' served initial disclosures, "neither party engaged in further discovery").

In Opposition, Plaintiff requests that "if the Court is inclined to dismiss the First Amendment claim, it should remand the surviving NYSHRL and NYCHRL claims to the Supreme Court of the State of New York, Kings County, where this action began." ECF No. 41 at 25. "Where the state claims originally reached the federal forum by removal from a state

court, the district court has the discretion to dismiss the claims without prejudice or remand them to the state court." *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988). Defendants do not address Plaintiff's remand request. *See generally* ECF No. 44 (Defendants' Reply). Accordingly, the Court remands the state law claims to state court. *See Herron v. New York City Transit*, No. 15-cv-4842, 2022 WL 1017662, at *10 (E.D.N.Y. Apr. 5, 2022) (dismissing federal claim and remanding state claims where defendants did not object to such remand).

### III. Leave to Amend

Finally, with respect to the federal claim, the Court denies leave to amend. "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90–91 (2d Cir. 2023) (affirming denial of leave to amend). Here, because Plaintiff does not seek leave to amend, the Court declines to grant it. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend] that was not made."). In any event, "leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless." *Harris v. Westchester Cnty. Med. Ctr.*, No. 08-cv-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the AC as to the only federal claim. *See* ECF No. 36. Plaintiff's First Amendment retaliation claim against all Defendants is therefore dismissed with prejudice. Plaintiff's state law claims against the DOE (Counts One through Four of the AC) are remanded to state court. The Clerk of Court is

respectfully directed to mail a copy of this Order to the Clerk of the Kings County Supreme Court (Index No. 526091/2025), enter judgment consistent with this Order, and close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 21, 2026